## O. B. JOSLIN V. STATE

No. 29,130. June 26, 1957.
Appellant's Motion for Rehearing Overruled
(Without Written Opinion) October 16, 1957.

*Sanders & Stanford,* by *C. L. Stanford,* Canton, for the appellant.

*Joe Tunnell,* Criminal District Attorney, Canton, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is the possession of whiskey for the purpose of sale in a dry area; the punishment, 30 days in jail and a fine of $200.00.

Officers Heddin and Lawrence testified that they searched the appellant's home and there found eleven pints of whiskey. One pint was concealed in a cereal box, and the other ten were found by removing a board in the floor of a cabinet. It was stipulated that Van Zandt was a dry area, and the appellant did not testify or offer any evidence in his own behalf.

The state conceded in the trial court that the search warrant which the officers had in their possession was invalid and relied upon consent of the appellant's wife to the search.

We shall discuss the question of consent.

The officers testified that they prepared the affidavit in Canton, went to Grand Saline and secured the warrant from the

justice of the peace, and proceeded to the appellant's house, where they were met at the door by his wife. They stated that they introduced themselves as officers, asked the appellant's wife if they could search her house, and she replied, "Come right on in, you looked for some once before and you didn't find anything and I don't think you will this time," and that she said something further about being glad that they had come while the children were away. They stated that at this juncture, as one of the officers started to hand her the warrant, the appellant's wife turned and walked back in the house, and the officer told her that he had a warrant and placed it on a cabinet. This, we think, is an accurate summary of their testimony.

Judge Christian, in Hernandez v. State, 137 Texas Cr. Rep. 343, 129 S.W. 2d 301, reviewed the holdings of this court on the question here presented as follows:

" * * * It is the unbroken rule in this state that 'an accused may give his consent to a search and thereby waive irregularities in the search warrant or dispense altogether with the necessity for one.' 38 Texas Jur. 77; Davidson v. State, 126 Texas Cr. Rep. 472, 72 S.W. 2d 591. Thus, where an officer without having a search warrant or indicating that he has one, makes a request to search the premises of the accused and the accused replies, 'All right' or 'All right; go ahead,' he is in the attitude of giving his consent to the search. But, if the officer is armed with a defective search warrant and the accused employs the language just indicated, consent will not be inferred. In Dixon v. State, 108 Texas Cr. Rep. 650, 2 S.W. 2d 272, 273, this court said: 'We are of opinion that one, who is informed by the officers that they have a search warrant under which they propose to search his house, who says nothing further than, "All right; go ahead," cannot be held to thereby waive irregularities in the search warrant, or to have given his consent to the search without warrant.' However, this court has held that if the officer is armed with a defective search warrant and the accused says, 'Go ahead and search; you don't need a warrant,' it will be inferred from the language used that he consents to the search. Hogland v. State, 124 Texas Cr. Rep. 344, 62 S.W. 2d 137. In the present case it is observed that when the officers advised appellant that they wanted to search his house he replied, 'All right; enter and search it.' Giving effect to the announcement of the decisions, we are constrained to hold that his consent was given."

By the same token, we are constrained to hold here that

where the wife told the officers that she appreciated them waiting until the children were away before coming to search and commented on the fact that they had searched once before and predicted that this visit would likewise be unfruitful we must hold that she consented to the search; especially is this so since the consent was given prior to the time she was advised by the officer that he had a search warrant. Ellis v. State, 130 Texas Cr. Rep. 220, 93 S.W. 2d 438.

The next question relates to the charge, verdict and judgment.

In the court's charge, where he defined the offense, he told the jury that the punishment might be fine or imprisonment "or by both such fine and imprisonment." In applying the law to the facts, he told them that the punishment might be by fine or imprisonment but did not tell them both.

The jury verdict found in the transcript reads, in part, as follows: "* * * and assess his punishment at $200.00 fine (illegible mark) 30 days in jail."

When such verdict was entered in the judgment, it read "and assess his punishment at a $200.00 fine and 30 days in jail," and the court ordered that he should pay the fine and be so confined.

We hold, first, that, since the punishment was well within that provided by the statute, the failure of the court to tell the jury, in that portion of the charge which applied the law to the facts, that they might assess both fine and imprisonment will not vitiate the verdict, especially since the court had correctly stated the law in one place in his charge and there were no objections to that portion of the charge where he failed to incorporate the words "or by such fine and imprisonment."

We hold, next, that we cannot be bound by the clerk's inability to read a word in the verdict when the court, who also had the same instrument before him but which is not before us, was able to do so.

Appellant's contention that the judgment is not supported by the verdict is overruled.

Appellant next contends that the court erred in not permitting him to read from a book during the course of his argu-

ment to the jury. Gutierrez v. State, 96 Texas Cr. Rep. 327, 257 S.W. 889, relied upon by the appellant, does not support his position nor are we aware of any case that does.

Appellant's last complaint relates to the argument of the prosecutor in which he said that he did not believe in letting bootleggers go free, after he had been admonished by the court not to refer to the "bootleg laws." We have concluded that the trial judge was overly careful and that no error is reflected by the bill.

The judgment is affirmed.