RUDOLPH WILLKE, EX PARTE.

A person being charged with the theft of eleven doors, it was proved that the doors, when taken from the owner, were fastened by hinges to her unoccupied house, and that the accused soon afterwards sold them in a neighboring village. There was no evidence as to the person by whom they were taken from their hinges. *Held*, on *habeas corpus*, that though the doors were part of the realty and not the subject matter of theft as long as they were attached to the house, yet, when severed from the house, they became personal property, and as such they were the subject matter of theft; and even if it had been proved that they were taken from their hinges by the accused, yet his subsequent asportation and conversion of them, without the owner's consent and with the intent to deprive her of their value, constituted theft in a legal as well as a moral sense—and not a mere trespass.

Appeal from a recommitment ordered by the Hon. I. N. Everett, on hearing of a writ of *habeas corpus.*

The opinion states the substance of the evidence.

*Altgelt & Portis*, for the appellant.—There is but one feature in this case worthy of notice, viz: Has Willke committed an offense known to our penal laws?

The doors, when last seen by witness Barter, were fixtures, annexed to the house or building of Mrs. Train, and as such a part of the freehold. Neither the Penal Code nor the common law recognizes the felonious taking of anything affixed to the land as theft.

Although our statute (Penal Code) pretends to be a complete system of penal laws in itself (article 3), yet for a rule of construction we have to resort to the common law and its principles. (Article 4.)

The definition of theft in our Penal Code (article 745) speaks of no other objects of theft than corporeal personal property, and excludes anything which savors of the realty, except, as in article 753, deeds of and for lands, and in article 761, growing or standing corn, wheat, etc. These are the only two exceptions; but the severance from realty of any material of which it is formed, and converting the same to his own use with the intent to steal the same, has not been made penal by our laws, nor was such an act punishable under the common law.

"Larceny cannot be committed of things which savor of the realty, though when they are severed the case is otherwise. This principle is best illustrated by the very refined distinction taken by Chief Justice Gibbs, that though a thief severs a copper pipe and instantly carries it off, it is no felony at common law; yet if he lets it remain after it is severed any time, then the removal of it becomes a felony if he comes back and takes it; and so of a tree which has been some time felled." (Wharton's Criminal Law, 753.)

In Russell on Crimes, volume 1, page 61, we find that larceny at common law cannot be committed of things part of the freehold; that the severance of things affixed or annexed to buildings is a trespass only; and the learned author gives his reasons for this ancient doctrine; and when the severing of the fixtures and the taking them away is one continued act, it is no larceny.

The definition of theft in our code and the one at common law do not differ materially; and a large portion of property being thereby placed in a very precarious and unprotected situation, the legislatures in most of the States of this Union have interfered for its protection.    New York, for instance, by making the severance from realty a penal offense; Massachusetts, Pennsylvania and Virginia by similar statute laws prohibiting the stealing of real property, and affixing to the offense the proper punishment. Texas, however, has failed to provide for such an offense; and although there may be no difference from the standpoint of morality in wrenching doors from their hinges, taking them away and selling them, and in stealing doors not fastened, nor fixed or annexed to the realty; yet the distinction is drawn between personal and real property in the law upon theft; and not this honorable court, but the Legislature alone, can fill up the gap and cure the defect or omission by enacting a law in which such an offense is defined and the proper punishment affixed.

The taking away of these doors by Willke on one day, when he had severed them from the realty the day previous, or if there had been an interval between the severing and the taking, the case would be otherwise; but the evidence does not bear out such a case.    The State had to prove the larceny first; and the only proof of the taking off the doors by the applicant consists in the fact that he had and sold them in Fredericksburg, and that, a few days before, they were seen hanging on their hinges.    Everything else is left to presumption; and so have we to presume, in the absence of any evidence, that the severing and taking away of these

doors was one continued act, and therefore no felony, nor any crime known to our law; and therefore we confidently ask·the court that the applicant be discharged.

*John G. Boyle,* Assistant Attorney General, for the State, insisted that the facts constituted theft, and cited Hale's Pleas of the Crown, 510; Regina v. Riley, 11 English Law and Eq. Reports, 545; 1 Mass., 116; 7 Metcalf, 475; 11 Ohio, 110; 3 Conn., 185; 11 Vermont, 650; 1 Pickering, 384; Wharton's American Criminal Law, § 1753; 2 Russell on Crimes, 62; 2 Bishop's Criminal Law, §§ 781, 782.

OGDEN, J.—The applicant in this case was arrested by virtue of a warrant from a justice of the peace, on the charge of theft of eleven doors, and was committed to jail on failure to give a bond for his appearance, in the sum of six hundred dollars. The applicant sued out a writ of *habeas corpus* before the district judge of the twenty-sixth judicial district, who, after hearing the evidence, remanded the applicant to jail in default of bail as fixed by the justice of the peace, and he has now appealed to this court for a revision of that judgment.

It is claimed by counsel for the applicant that their client should be discharged, because the doors charged to have been stolen, when taken, were attached to the house as a part of the realty, and therefore under our laws not a subject of theft. We are hardly willing to follow the very refined distinction taken by Chief Justice Gibbs, as cited by counsel, since, if the applicant took the doors as charged, some one must have taken them from their hinges, and as soon as that was done the doors became personal property, and properly the subject of theft. Besides, the applicant had the doors in his possession for some time, hauling them to town for sale. There is no evidence that he took the doors from their hinges, but there is evidence that he had them in possession as personal property, recently after the theft; and we are of the opinion that if the

applicant took the doors from the house as charged, and afterwards sold them or otherwise converted them to his own use and benefit, without the consent of the owner, and with the intent to deprive the owner of the value of the same, then he is morally and legally guilty of theft; and that it is not the duty or province of the court to invoke a presumption of a refined technicality, in order to save an acknowledged criminal and thief from certain, speedy and condign punishment. The judgment of the district judge on the return of the writ of *habeas corpus*, is in all things affirmed.

Affirmed.